United States District Court
Southern District of Texas
**ENTERED**
March 31, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| JUDITH  MORENO, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 7:15-CV-162 |
| | § | |
| MCALLEN INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending before the Court are two motions to dismiss filed by McAllen Independent School District ("Defendant" or "McAllen ISD"). The first is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)[1] and the second is a motion to dismiss claims barred by the Texas Torts Claims Act.[2] Judith Moreno ("Ms. Moreno") and Jose Ramiro Moreno (collectively, "Plaintiffs") responded timely to the motion to dismiss pursuant to 12(b)(6),[3] to which McAllen ISD replied.[4] Plaintiffs failed to respond to the motion to dismiss claims barred by the Texas Torts Claims Act. After considering the motions, response, reply, record, and relevant authorities, the Court **GRANTS** McAllen ISD's motions to dismiss.

---

[1] Dkt. No. 12.
[2] Dkt. No. 20.
[3] Dkt. No. 18.
[4] Dkt. No. 21.

## I.    Background

### a.   Factual

The following facts are recited by the Court as pleaded by Plaintiffs in their first amended complaint.[5] Ms. Moreno is the mother of Jose Ramiro Moreno.[6] Jose Ramiro Moreno was a student at McAllen High School when, "in early 2012 and continuing through the school-year, Ezekiel Gonzalez, while under the employment, supervision, and control of [McAllen ISD] as a teacher, sought after and sexually violated Jose Ramiro Moreno."[7] The inappropriate sexual conduct between Ezekiel Gonzalez ("Gonzalez"), a teacher, and Jose Ramiro Moreno, a minor at that time, allegedly began on a school trip to a debate tournament in San Antonio.[8] The conduct continued after the trip, including on campus at McAllen High School.[9] Ms. Moreno "promptly informed" school officials, who then "feigned an 'investigation into the matter' by, in an intimidating manner, pulling Jose Ramiro Moreno, out of class and questioning him."[10] Ms. Moreno accuses McAllen ISD of failing to take action against Gonzalez and choosing, instead, to drop their investigation.

### b.   Procedural

On April 15, 2015, Ms. Moreno filed the instant lawsuit as next friend of Jose Ramiro Moreno.[11]   McAllen ISD subsequently filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(7), objecting to Ms. Moreno bringing this lawsuit as next friend of Jose

---

[5] Dkt. No. 11 ("First Amended Complaint"). The Court must accept these allegations as true when considering the motions to dismiss. *See Jenkins v. McKeithen,* 395 U.S. 411, 421 (1969) ("For the purposes of a motion to dismiss, the material allegations of the complaint are taken as admitted.").
[6] *Id.* at ¶ 15(e).
[7] *Id.* at ¶ 6.
[8] *Id.*
[9] *Id.* at ¶ 7.
[10] *Id.*
[11] Dkt. No. 1.

Ramiro Moreno because he was no longer a minor and did not lack capacity to sue.[12]  Ms. Moreno responded by filing an unopposed motion for leave, requesting that the Court grant her permission to amend the complaint in order to add Jose Ramiro Moreno as an appropriate plaintiff.[13]  The Court granted the motion for leave to amend and denied the 12(b)(7) motion to dismiss as moot.[14]  Plaintiffs then filed their first amended complaint, adding Jose Ramiro Moreno as an additional plaintiff.[15]

On June 4, 2015, McAllen ISD filed the Rule 12(b)(6) motion now being considered.[16] McAllen ISD simultaneously filed an answer.[17]  Plaintiffs timely responded to the first motion to dismiss on June 24, 2015.[18]   Shortly thereafter, McAllen ISD filed the second motion to dismiss.[19]  Plaintiffs did not respond.  Plaintiffs instead filed another motion for leave to amend, requesting the Court allow them to include Ezekiel Gonzalez, the teacher who allegedly sexually assaulted Jose Ramiro Moreno, as an individual defendant.[20]  The Court denied the motion, finding that Plaintiffs' actions were tainted with bad faith and constituted undue delay.[21]

## II.   Causes of Action in the Complaint

Plaintiffs' amended complaint filed on June 1, 2015 asserts causes of action pursuant to 42 U.S.C. §1983, 42 U.S.C. §1985, and Title IX of the Education Amendments of 1972 ("Title IX").[22]  Plaintiffs also assert state tort claims of assault and battery, negligence and negligence per se, and intentional infliction of emotional distress. The Court briefly addresses each claim.

---

[12] Dkt. No. 6.
[13] MFL at ¶ 1.
[14] Dkt. No. 10.
[15] First Amended Complaint.
[16] Dkt. No. 12.
[17] Dkt. No. 14.
[18] Dkt. No. 18.
[19] Dkt. No. 20.
[20] Dkt. Nos. 22-23.
[21] Dkt. No. 24.
[22] 20 U.S.C. §1681 *et seq.*

*a.  42 U.S.C. §1983*

With regards to the Section 1983 claim, Plaintiffs allege that Gonzalez "was the agent and employee of [McAllen ISD] and was acting under color of state law."[23] Throughout the complaint, Plaintiffs repeatedly impute the actions of Gonzalez to McAllen ISD and consider them the actions of the school district. Thus, through the actions of Gonzalez, Plaintiffs claim that McAllen ISD violated Jose Ramiro Moreno's constitutional rights under the Fifth, Eighth, and Fourteenth amendments to be free "from any state-sponsored deprivation of liberty without due process of law, free from the use of cruel and unusual punishment, and enjoyment of equal protection under the law; and [p]hysical and emotional pain, trauma, and suffering."[24] Plaintiffs make the same claim for Ms. Moreno, and further allege she suffered from the "[l]oss of financial resources expended in pursuing administrative and legal remedies while Jose Ramiro Moreno was a minor; and [l]oss of financial resources expended on Jose Ramiro Moreno due to [his] physical and emotional pain, trauma and suffering. [25]

With regards to the policymakers of McAllen ISD and the municipal liability of McAllen ISD required by Section 1983, Plaintiffs state that the school district "officials" were policymakers and they acted with deliberate indifference toward their duties by failing to "fashion properly or to execute faithfully adequate municipal policies to govern the hiring, training, supervision, and discipline of teachers and/or principals."[26] Such failures include: failing to train school officials on how to properly investigate complaints regarding teachers, failing to train school employees regarding how to report improper relationships between

---

[23] First Amended Complaint at ¶ 15(c).
[24] *Id.* at ¶ 11.
[25] *Id.* at ¶ 12.
[26] *Id.* at ¶ 15(g).

teachers and students, failing to properly supervise and discipline Gonzalez, and responding with deliberate indifference to credible evidence of misconduct.[27]

Plaintiffs contend that McAllen ISD officials "simply pretended to see nothing, hear nothing" despite the "endemic problem on campus" concerning improper sexual relations between teacher and students.[28] Additionally, Plaintiffs assert McAllen ISD "either knew or had constructive knowledge of improper sexual conduct between faculty and students" and that the school district's failure to take action to protect students amounts to authorization or ratification of the wrongful conduct.[29]

   b. *42 U.S.C. §1985*

Plaintiffs further advance a claim against McAllen ISD under 42 U.S.C. §1985.[30] Plaintiffs simply state that:

> Defendant is additionally liable to Plaintiff for the violation of 42 U.S.C. §1985, in that two or more of them conspired for the purpose of [d]epriving Plaintiffs of equal protection of the law; [d]epriving Plaintiffs of due process of the law; and [h]indering the constituted authorities from giving or securing equal protection and due process of law to all persons.[31]

   c. *Title IX*

Specifically regarding the Title IX claim, Plaintiffs assert that McAllen ISD receives federal funding,[32] and that McAllen ISD failed "to have policies, procedures, practices, and customs in place to assure Plaintiff Jose Ramiro Moreno was not a victim of harassment and

---

[27] *Id.*
[28] *Id.* at ¶ 8 ("Rumors of teachers having sex with several of their students, not only swirled around the hallways, but were openly bragged about, and even bet on, by students. There is even a video of a teacher and student engaging in sexual conduct.").
[29] *Id.* at ¶¶ 13-14.
[30] *Id.* at ¶ 16.
[31] *Id.* at ¶ 16(b).
[32] *Id.* at ¶ 19(b).

sexual abuse based upon his gender . . . ."[33] Plaintiffs further assert that the sexual assaults by

Gonzalez violated Jose Ramiro Moreno's rights under Title IX.[34]

### d.  Texas State Law Tort Claims

Finally, Plaintiffs allege the personal torts of assault and battery, negligence and

negligence per se, and intentional infliction of emotional distress.[35] These state tort claims are all

premised on the alleged sexual assault.

## III.    The Instant Motions

In the first motion, McAllen ISD moves to dismiss all of Ms. Moreno's claims for failure

to state a claim upon which relief may be granted.[36] As a starting point, McAllen ISD contends

that Ms. Moreno failed to state "any factual allegations of any conduct of [McAllen ISD]

directed to her which would in any form support her claims of constitutional violations as

alleged."[37] Thus, McAllen ISD argues "all her claims brought under 42 U.S.C. §1983 for

violations of the U.S. Constitution must be dismissed."[38] McAllen ISD further argues "there is

no 'bystander' liability for the alleged Constitutional violations."[39]

In the second motion, McAllen ISD moves to dismiss Plaintiffs' claims of negligence and

intentional torts arguing these claims are barred by the Texas Torts Claims Act.[40] Specifically,

McAllen ISD argues that "[a]ll state law claims are barred by [McAllen ISD's] sovereign

immunity and the Texas Tort Claims Act."[41]  The Court addresses each motion in turn.[42]

---

[33] *Id.* at ¶ 19(c).
[34] *Id.*
[35] *Id.* at ¶¶ 17, 18, 20.
[36] Dkt. No. 12 at ¶ 1.
[37] *Id.* at ¶ 2.
[38] *Id.*
[39] *Id.* at ¶ 5.
[40] Dkt. No. 20.
[41] Dkt. No. 20 at ¶ 3.
[42] As an initial matter, the Court notes that Plaintiffs have failed to comply with the Federal Rules of Civil Procedure with regard to the instant filing. Rule 7(b)(2) provides that "[t]he rules governing captions and other matters of form in pleadings apply to motions and other papers." Rule 10(b) in turn states that "[a] party must state its claims or

### IV.    Standards of Review

Before a party has answered a complaint, the proper mechanism for removing a claim from the Court's consideration is a motion to dismiss under Rule 12(b)(6). After the pleadings are closed, the proper mechanism is a Rule 12(c) motion for judgment on the pleadings. Here, McAllen ISD seeks dismissal of Ms. Moreno's claims under Rule 12(b)(6) and of both Plaintiff's claims pursuant to the Texas Torts Claims Act. Because McAllen ISD has answered,[43] the Court will evaluate these motions under Rule 12(c).  Nonetheless, this does not change the substantive analysis since a motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6).[44]

At the motion to dismiss stage, the Court limits its inquiry "to the facts stated in the complaint and the documents either attached to or incorporated in the complaint."[45] To survive a 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[46] This does not require detailed factual allegations, but it does require "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[47] The Court regards all such well-pleaded facts as true and views them in the light most favorable to plaintiff.[48] Considered in that manner, factual allegations must raise a right of relief above the speculative level.[49]

---

defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Though Plaintiffs assert their response in numbered paragraphs, the numbers are not sequential throughout the document, hindering the Court's reference to Plaintiffs' arguments. Plaintiffs are cautioned that future submissions should sequentially number each paragraph to properly comply with the Federal Rules.

[43] Dkt. No. 14.
[44] *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).
[45] *Wilson v. Birnberg*, 667 F.3d 591, 600 (5th Cir. 2012)(internal citation omitted).
[46] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008) (internal quotations omitted).
[47] *Twombly*, 550 U.S. at 555.
[48] *Id.*
[49] *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555).

Pursuant to the Supreme Court precedent set forth in *Ashcroft v. Iqbal*,[50] the Court first disregards from its analysis any conclusory allegations as not entitled to the assumption of truth.[51] The Court then undertakes the "context-specific" task of determining whether well-pleaded allegations give rise to an entitlement of relief to an extent that is plausible, rather than merely possible or conceivable.[52] The "plausibility" standard requires the complaint to state "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements."[53] As the Supreme Court recently clarified, the plausibility standard concerns the factual allegations of a complaint; the federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."[54]

## V.    Ms. Moreno's Claim under 42 U.S.C. §1983

### a.    *Legal Standard*

Ms. Moreno brings this lawsuit pursuant to 42 U.S.C. § 1983. "Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating already conferred federal rights."[55] Thus, to state a claim under Section 1983, a party must sufficiently plead (1) a violation of a right secured by the Constitution or laws of the United States and (2) that the alleged deprivation was committed by a person acting under color of state law.[56] In this instance, Ms. Moreno alleges generally that McAllen ISD violated her constitutional rights under the Fifth, Eighth, and Fourteenth amendments.[57] The only factual elaboration on these claims is Ms.

---

[50] 556 U.S. 662 (2009).
[51] *See id.* at 678-679.
[52] *See id.* at 679-680.
[53] *In re So. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).
[54] *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346-47 (2014).
[55] *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003).
[56] *Resident Council of Allen Parkway Vill. V. U.S. Dep't of Hous. & Urban Dev.*, 980 F.2d 1043, 1050 (5th Cir. 1993) (citing *West v. Atkins,* 487 U.S. 42, 48 (1998)).
[57] First Amended Complaint at ¶ 12.

Moreno's assertion that "[b]y using objectionable sexual contact or conduct" on Jose Ramiro Moreno, Ms. Moreno was injured.[58]

For Ms. Moreno to succeed on a Fifth Amendment claim, she must show that a *federal* action deprived her of rights.[59] As to the Fourteenth Amendment Due Process claim, Ms. Moreno "must show that [she] asserted a recognized 'liberty or property' interest within the purview of the Fourteenth Amendment . . . and that [she was] intentionally or recklessly deprived of that interest, even temporarily, under color of state law . . . ."[60] For Ms. Moreno to succeed with a claim under the Equal Protection Clause of the Fourteenth Amendment, she must show that a state actor intentionally discriminated against her due to her membership in a protected class.[61] Finally, as to the Eighth Amendment claim, Ms. Moreno must show that she was convicted and that the conditions of her confinement constituted "cruel and unusual punishment."[62]

Additionally, a municipality or city may be liable to suit under Section 1983 if the claim is "based upon the implementation or execution of a policy or custom which was officially adopted by that body's officers."[63] To impose "municipal liability" on a school district like McAllen ISD, Plaintiff must prove the existence of: (1) a policymaker; (2) an official policy or custom; and (3) a violation of constitutional rights whose "moving force" is the policy or custom.[64] "[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under §1983 on a *respondeat superior*

---

[58] First Amended Complaint at ¶ 15(e).
[59] *Dusenbery v. United States*, 534 U.S. 161, 122 S. Ct. 694, 151 L. Ed. 2d 597 (2002) ("Due process clause of Fifth Amendment prohibits the United States, as due process clause of Fourteenth Amendment prohibits the States, from depriving any person of property without due process of law.").
[60] *Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir. 1990) (citations omitted).
[61] *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) (citations omitted).
[62] *Wilson v. Seiter*, 501 U.S. 294 (1991).
[63] *Krueger v. Reimer*, 66 F.3d 75, 76 (5th Cir. 1995).
[64] *See Piotrowski v. City of Houston*, 237 F.3d 567, 578-79 (5th Cir. 2001) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)).

theory."[65] For municipal liability to attach to McAllen ISD, the unconstitutional conduct must be "directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability."[66] Thus, consideration of the three principles of municipal liability is integral to distinguishing individual violations by employees from actions of the governmental entity itself.[67]

With regards to the policymaker, "[a]ctual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority."[68] Additionally, the existence of a policy or custom can be established either through an authorized policymaker's "statement, ordinance, regulation, or decision," or a "persistent, widespread practice of [] officials and employees" that "is so common and well settled as to constitute a custom that fairly represents municipal policy."[69] Even if the policy or custom is facially innocuous, it can support liability under Section 1983 if it was "promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result."[70] Lastly, there must be a direct causal link between the policy and the constitutional deprivation.[71]

   b.  *Analysis*

McAllen ISD's first motion to dismiss objects to the presence of Ms. Moreno in this suit.[72] Plaintiffs counter that McAllen ISD violated Ms. Moreno's fundamental parental due

---

[65] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) (emphasis in original).
[66] *Piotrowski*, 237 F.3d at 578.
[67] *Id.*
[68] *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984)(en banc).
[69] *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (per curiam), *cert. denied*, 105 S.Ct. 3476 (1985).
[70] *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (citing *Bd. Of Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 407 (1997)).
[71] *Id.* at 580.
[72] Dkt. No. 12.

process rights due to their failure to protect Jose Ramiro Moreno from Gonzalez.[73] By such failure, Plaintiffs contend McAllen ISD "irrevocably violated Ms. Moreno's right to raise her child how she saw fit."[74] Plaintiffs go on to assert: "[Parents] have a liberty interest in being free from having their children raped when in the care of schools."[75] Plaintiffs further argue that case law in Texas allows "parents to recover from the loss of consortium with a child when the child suffers an actionable nonfatal injury."[76] Accordingly, Plaintiffs contend that the Court should not dismiss Ms. Moreno's claims as she has "alleged and plead sufficient facts . . . to find that she has a cause of action for loss of consortium under § 1983."

McAllen ISD replies that the case cited by Ms. Moreno does not apply to her claims because a subsequent decision by the Texas Supreme Court in *Roberts v. Williamson* "declined to extend a claim for loss of consortium to parents of children who have been seriously, but not fatally, injured."[77] McAllen ISD asserts also that Ms. Moreno lacks a "viable loss of consortium claim to support her Section 1983 claim" because courts within the Fifth Circuit Court of Appeals have dismissed similar claims after applying the holding in *Roberts v. Williamson*.[78]

The Court agrees that Ms. Moreno cannot pursue this action individually because she fails to state a cause of action pursuant to Section 1983. Ms. Moreno argues that she has stated a cause of action under Section 1983 in two ways: She has suffered (1) a violation of the constitutionally protected liberty interest each parent has in caring for and controlling their child

---

[73] Dkt. No. 18 at p. 3.
[74] *Id.*
[75] *Id.*
[76] *Id.*at p. 4 (citing *Robinson v. L. J. Johnson*, 975 F. Supp. 950, 951 (S.D. Tex. 1996)).
[77] Dkt. No. 21 at ¶ 9 (citing *Roberts v. Williamson*, 111 S.W.3d 113, 120 (Tex. 2003) ("We conclude that no compelling social policy impels us to recognize a parent's right to damages for the loss of filial consortium.")); *see also Braus v. Bowen*, 10-06-00226-CV, 2007 WL 2994065, at *1 (Tex. App.—Waco Oct. 10, 2007)("In *Roberts,* the Texas Supreme Court held that a parent does not have a claim which can be asserted against those alleged responsible for the injuries to an adult child.").
[78] *Id.* at ¶ 10 (citing *Valadez v. United Indep. Sch. Dist.*, CIV. A. L-08-22, 2008 WL 4200092, at *1 (S.D. Tex. Sept. 10, 2008) ("Texas law has not extended consortium rights to parents of an injured child.")).

and (2) the loss of consortium with her child. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." The United States Supreme Court has recognized that the Due Process Clause of the Fourteenth Amendment "guarantees more than fair process" and "provides heightened protection against government interference with certain fundamental rights and liberty interests."[79] Pertinent to this case, the Supreme Court has long affirmed the fundamental right of parents to make decisions as to care, custody, and control of their children.[80] Parental rights are a protected liberty interest: "the liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court."[81]

Since the parent-child relationship is one that is constitutionally protected, a violation of this right may permit a party to proceed with a Section 1983 action.[82] However, in the absence of intentional, state interference with the child, it is challenging for a plaintiff to launch a Section 1983 claim based on the fundamental rights of parents.[83] Case law relating to parental liberty

---

[79] *Washington v. Glucksberg*, 521 U.S. 702, 719-20 (1997).

[80] *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000) (discussing "extensive precedent").

[81] *Id.* at 65.

[82] *See Kelson v. City of Springfield*, 767 F.2d 651, 654 (9th Cir. 1985) ( discussing cases in the Ninth Circuit, and other circuits, where parent brought Section 1983 claims based upon deprivation of constitutionally protected liberty interest as an individual plaintiff).

[83] *Malagon de Fuentes v. Gonzales*, 462 F.3d 498, 505 (5th Cir. 2006) (discussing that "the Supreme Court has protected the parent only when the government directly acts to sever or otherwise affect his or her legal relationship with a child. The Court has never held that governmental action that affects the parental relationship only incidentally . . . is susceptible to challenge for a violation of due process") (quoting *McCurdy v. Dodd*, 827 (3rd Cir.2003) (citations omitted)). There is a split among the circuit courts as to whether parents have protected liberty interest in the companionship of their adult children under Fourteenth Amendment. *See Robertson v. Hecksel*, 420 F.3d 1254, 1255 (11th Cir. 2005) (holding mother did not have constitutionally protected liberty interest in her relationship with her adult son, who was fatally shot by police officer during traffic stop, because "the Fourteenth Amendment's substantive due process protections do not extend to the relationship between a mother and her adult son"). *Compare with Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1106 (9th Cir. 2014), *cert. denied sub nom. City of Los Angeles, Cal. v. Chaudhry*, 135 S. Ct. 295 (2014) ("Our decisions recognize that parents have a liberty interest in the companionship of their adult children and have a cause of action under the Fourteenth Amendment when the police kill an adult child without legal justification."). These cases discuss substantive due process protection of the parent-child relationship as it relates to the loss of companionship with a child. These arguments do not squarely apply here because Ms. Moreno has not alleged a loss of companionship.

rights is narrow and largely addresses the right of parents to make critical child-rearing decisions concerning the care, custody, and control of minors.[84] While Ms. Moreno does have certain fundamental rights with respect to her child,[85] she does not claim that the government has interfered with these parental rights here. The premise of her claim is *not* that state actions deliberately undermined her right as a parent to be able to make critical decisions about the care, custody and control of her child; but rather that as a parent, her right to protect her child from injury and rape was violated by McAllen ISD. Thus, Ms. Moreno is arguing that McAllen ISD action's allegedly caused her child harm, and as a result, she was deprived of her constitutionally protected rights. The Court cannot find any case law in the Fifth Circuit to support this argument, and Plaintiffs have not provided any relevant authority.

A student is deprived of a liberty interest recognized under the "substantive due process component of the Fourteenth Amendment" when sexually abused by a school employee.[86] While a student has a right to be free from state-occasioned damage to his bodily integrity,[87] it is the student, or the parent as next friend, that must bring forth a claim that this right was violated.[88]

---

[84] *See Troxel,* 530 U.S. at 66.

[85] *Littlefield v. Forney Ind. Sch. Dist.,* 268 F.3d 275, 288 (5th Cir.2001) (recognizing the care, custody and control of children as fundamental liberty interests).

[86] *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451-52 (5th Cir. 1994) (collecting cases that establish the Constitution protects schoolchildren from state-occasioned physical and corporal punishment that is arbitrary, capricious, or wholly unrelated to legitimate state interests; and holding that the Fourteenth Amendment also protects children against physical sexual abuse by state actors).

[87] *Id.* at 450-51 (citing *Shillingford v. Holmes,* 634 F.2d 263, 265 (5th Cir.1981)).

[88] In many jurisdictions, parents' derivative Section1983 claims on their own behalf based on violations of the constitutional rights of their children have been denied. *See Harry A. v. Duncan,* 351 F.Supp.2d 1060, 1065-66 (D. Montana 2005); *Morgan v. City of New York,* 166 F.Supp.2d 817, 819 (S.D.N.Y. 2001) ("[t]o prevail in an action brought under § 1983 a plaintiff must show that he or she was deprived of a right, privilege or immunity secured by the Constitution or laws of the United States.")(citation omitted); *Burrow v. Postville Community School District,* 929 F.Supp. 1193 (N.D. Iowa 1996). However, if the parents' injury is not derived from the child's injury, but is based on a separate injury to the parents that occurred when the child was injured, the claim is more likely to be sustained. *Id.* Even then, "family members do not have an independent claim under § 1983 unless the constitutionally defective conduct or omission was directed at the family relationship." *Nunez Gonzalez v. Vazquez Garced,* 389 F. Supp. 2d 214 (D.P.R. 2005).

The Court finds the rational in *Unger v. Compton* particularly helpful in its analysis here.[89] In *Unger*, a father attempted to bring claims pursuant to Section 1983 when his son was allegedly subjected to an unlawful arrest and imprisonment.[90] Defendants sought to dismiss the father's claims for lack of capacity and standing because the father, Daniel Unger, failed to allege any personal deprivation of his constitutional rights. The father claimed to have suffered mental anguish and distress due to the unlawful arrest and imprisonment of his son. The United States District Court for the Eastern District of Texas ultimately determined that the father failed to state a claim pursuant to Section 1983, explaining:

> Daniel Unger does not identify a constitutional right of his that was allegedly violated by Defendants. Plaintiff's reliance on *Flores v. Cameron County, et al.,* 92 F.3d 258 (5th Cir.1996), for the proposition that a parent may recover mental anguish damages for the violation of his child's civil rights is misplaced. Plaintiff omitted an important part of the sentence from the *Flores* case that is quoted in his response to Defendants' motion for summary judgment. The full reading of the sentence quoted by Plaintiff states, "[w]e have consistently held that a parent may recover damages *analogous to state law wrongful death damages* in a § 1983 action based on the violation of her child's civil rights." *Flores,* 92 F.3d at 271 (emphasis added). The *Flores* case involved a mother pursuing a § 1983 claim on behalf of her deceased minor son, as well as a personal claim for damages arising from the death of her son. Unlike the *Flores* case, this case does not involve a parent's claim for wrongful death-type damages arising from the death of a child. Plaintiff Daniel Unger has not stated a claim pursuant to § 1983.[91]

The instant case is analogous to *Unger*. Here, Ms. Moreno, like Daniel Unger, is suing on her own behalf and not as next friend of her son. Second, like Daniel Unger, Ms. Moreno is not pursuing a Section 1983 claim for a deceased child. Third, Ms. Moreno, like Daniel Unger, asserts her injuries arise from the injury to her child. While Ms. Moreno does allege a constitutional deprivation, it is crucial "to focus on the allegations in [a] complaint to determine

---

[89] *Unger v. Compton*, CIV.A. 6:05CV186, 2006 WL 1737567, at *3-5 (E.D. Tex. June 23, 2006), *aff'd,* 249 Fed. Appx. 346 (5th Cir. 2007) (unpublished).
[90] *Id.* at *2.
[91] *Id.* at *5.

how [a plaintiff] describes the constitutional right at stake . . . ."[92] In doing so, the Court is mindful that the Supreme Court "has always been reluctant to expand the concept of substantive due process because guideposts for responsible decision-making in this uncharted area are scarce and open-ended."[93]

After reviewing the amended complaint, and heeding the caution encouraged by the Supreme Court in *Collins v. City of Harker Heights* when considering substantive due process claims, the Court is not convinced that Ms. Moreno has stated a claim for violation of her parental rights that would support a Section 1983 cause of action. This Court, like the Third Circuit, is "hesitant to extend the Due Process Clause to cover official actions that [are] not deliberately directed at the parent-child relationship."[94] Although the amended complaint does allege that Ms. Moreno has suffered as a result of the sexual abuse of her son,[95] it does not allege that the sexual abuse of Jose Ramiro Moreno was intended to deprive Ms. Moreno of the relationship between herself and her child, or impede her rights to make critical child-rearing decisions. Thus, the Court finds Ms. Moreno has failed to state a cause of action pursuant to Section 1983.

As to Ms. Moreno's assertion that a loss of consortium claim supports her Section 1983 claim, the Court finds that her citation to *Robinson v. L. J. Johnson* as inapposite. Texas law is clear and it does not authorize a parent to recover consortium damages for non-fatal injuries to a

---

[92] *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992) (citing *Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 225–226 (1985).

[93] *Id.*

[94] *McCurdy v. Dodd*, 352 F.3d 820, 829 (3d Cir. 2003).

[95] The Court notes that bystanders cannot recover for the negligent infliction of emotional distress under Section 1983. *Grandstaff v. City of Borger, Tex.,* 767 F.2d 161 (5th Cir. 1985) ("Negligent infliction of emotional distress is a state common-law tort; there is no constitutional right to be free from such distress and, thus, no liability for such distress under 42 U.S.C.A. § 1983.").

child, whether due to negligent or intentional conduct.[96] Thus, because Ms. Moreno has failed to state a claim pursuant to Section 1983, the Court **DISMISSES** her claims **WITH PREJUDICE**.

## VI.    Ms. Moreno's Claim under 42 U.S.C. §1985

Municipal liability for conspiracy under Section 1985 "requires a showing of "class-based, invidiously discriminatory animus behind the conspirator's action.""[97] There also must be evidence supporting the existence of a conspiracy.[98] Ms. Moreno wholly fails to show any invidious discrimination or existence of a conspiracy, and further fails even to articulate who was involved in the conspiracy and what the conspiracy entailed. The complaint is completely devoid of any facts that could support this claim. Thus, Ms. Moreno's claim against McAllen ISD under Section 1985 is hereby **DISMISSED**.

## VII.   Ms. Moreno's Claim under Title IX

### a. Legal Standard

Title IX generally prohibits sex discrimination in any education program or activity receiving federal funding.[99] Same-sex sexual harassment is actionable under Title IX.[100] The Supreme Court has long held that a plaintiff may pursue a Title IX claim for monetary damages based on discrimination in the form of sexual harassment.[101] Later, in *Gebser v. Lago Vista*, the Supreme Court established a multi-part analysis for establishing a sexual harassment claim under Title IX against a federal funding recipient: (1) the recipient or appropriate person had actual notice of the sexual harassment; and (2) the recipient or appropriate person did not adequately

---

[96] *Roberts v. Williamson*, 111 S.W.3d 113, 120 (Tex. 2003) ("We conclude that no compelling social policy impels us to recognize a parent's right to damages for the loss of filial consortium."); *Madden v. Wyeth*, 3-03-CV-0167-BD, 2005 WL 2278081, at *3 (N.D. Tex. Sept. 14, 2005); *Valadez v. United Indep. Sch. Dist.*, CIV. A. L-08-22, 2008 WL 4200092, at *1 (S.D. Tex. Sept. 10, 2008).
[97] *Aly v. City of Lake Jackson*, 2015 WL 1089491 at *2 (5th Cir. 2015)(internal citations omitted).
[98] *Id.*
[99] 20 U.S.C. §1681.
[100] *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.,* 153 F.3d 211, 219 (5th Cir.1998).
[101] *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992).

respond, i.e. responded with deliberate indifference.[102] *Gebser* defined an "appropriate person" as, at a minimum, an official of the recipient who has authority to address an alleged discrimination and put in place measures to rectify the discrimination.

      b.  *Analysis*

Ms. Moreno's Title IX claim is not actionable because she lacks standing. As the Fifth Circuit has explained:

> We conclude that [mother of student] does not have standing to assert a personal claim under title IX. It is undisputed that she has standing, as next of friend, to assert the claims of her daughters, but nothing in the statutory language provides her with a personal claim under title IX. Even assuming that title IX protects persons other than students and employees, [mother] has failed assert that she was excluded from participation, denied the benefits of, or subjected to discrimination under any education program or activity. Absent such a claim, the plain language of title IX does not support a cause of action by [mother].[103]

Thus, Ms. Moreno's Title IX claim is hereby **DISMISSED**.

## VIII.  **Plaintiffs' State Law Tort Claims**

Plaintiffs allege causes of action for the intentional torts of assault and battery and intentional infliction of emotional distress. However, McAllen ISD is protected from these claims by Texas Civil Practice and Remedies Code Section 101.057. The Texas Tort Claims Act waives government immunity for certain torts, but does not waive immunity when the claim arises out of an intentional tort.[104] Texas Civil Practice and Remedies Code Section 101.057 is the provision that protects government entities from state law intentional torts claims, and there

---

[102] 524 U.S. 274 (1998).
[103] *Rowinsky v. Bryan Indep. Sch. Dist.,* 80 F.3d 1006, 1010 n. 4 (5th Cir. 1996), *disapproved on other grounds* by *Davis v. Monroe Cnty. Bd. of Educ.,* 526 U.S. 629, 637–38 (1999); *see also Doe v. OysterRiver Co Op. Sch. Dist.,* 992 F.Supp. 467, 481 (D.N.H.1997) (dismissing mother's Title IX claim under 12(b)(6) on grounds that "only participants of federally funded programs and not the participants' parents—have standing to bring claims under Title IX.").
[104] *City of Watauga v. Gordon,* 434 S.W.3d 586, 587 (Tex. 2014); *see* Tex. Civ. Prac. & Rem. Code §101.021(2).

17 / 18

is no waiver of immunity from these claims.[105] Thus, Plaintiffs cannot sue McAllen ISD for assault and battery and intentional infliction of emotion distress under state law.

Additionally, Texas Civil Practice and Remedies Code Section 101.051 confers "immunity to school districts and their employees from liability for damages caused by negligence except in circumstances relating to the use, maintenance or operation of motor vehicles." Plaintiffs allege negligence and negligence per se, and neither claim is related to the operation of a motor vehicle. Thus, McAllen ISD cannot be sued for negligence based on the facts alleged. Accordingly, the Court **DISMISSES** Plaintiffs' claims for assault and battery, intentional infliction of emotional distress, and negligence and negligence per se.

## IX.    Holding

After carefully evaluating the first amended complaint, the live pleading in this case, the Court finds Ms. Moreno has failed to state any cognizable claim under 42 U.S.C. §1983, 42 U.S.C. §1985 and Title IX. Plaintiffs have also failed to state any cognizable state law claim of assault and battery, intentional infliction of emotional distress, negligence and negligence per se. Thus, the motions to dismiss are **GRANTED** and all of Ms. Moreno's claims are hereby **DISMISSED with PREJUDICE**. Furthermore, all of Plaintiffs' state law claims are also **DISMISSED**.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 31st day of March, 2016.

Micaela Alvarez
United States District Judge

_____

[105] *Id.* at 588.

18 / 18